UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 26-58791-sms |
| **JTN Property LLC,** | : | CHAPTER 7 |
| Debtor. | : | |
| **Select Portfolio Servicing Inc., as Servicing agent for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware statutory trust,** | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| **JTN Property LLC,** **Debtor.** **Kyle A. Cooper,** **Trustee.** | : | |
| Respondents. | : | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that ***Select Portfolio Servicing Inc., as Servicing agent for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware statutory trust (“Movant”)*** has filed a ***Motion for Relief from Stay (the “Motion”)*** and related papers with the Court seeking an order ***granting relief from the automatic stay***.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the ***Motion*** at ***10:00 A. M***. on ***September 2, 2026*** in Courtroom ***1201***, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which must be attended in person, unless the Court orders otherwise.

Your rights may be affected by the Court’s ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do

so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

***If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.***

Dated: 07/27/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE:<br>**JTN Property LLC,**<br><br>Debtor. | :<br>:<br>:<br>:<br>: | CASE NO. 26-58791-sms<br>CHAPTER 7 |
| **Select Portfolio Servicing Inc., as Servicing agent for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware statutory trust,**<br><br>Movant,<br>v. | :<br>:<br>:<br>:<br>: | CONTESTED MATTER |
| **JTN Property LLC**,<br>**Debtor.**<br>**Kyle A. Cooper**,<br>**Trustee.**<br><br>Respondents. | :<br>:<br>: | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

COMES NOW, Select Portfolio Servicing Inc., as Servicing agent for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware statutory trust, (hereinafter referred to as "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of

America.

2.

JTN Property LLC, (hereinafter referred to as "Debtor", filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 07, 2026.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest. Movant holds a security interest in the Debtor's real property now or formerly known as **623E Solomon St, Griffin, Georgia 30223** (hereinafter referred to as "Property") by virtue of a Security Deed dated October 07, 2021. Said Security Deed secures a Note in the original principal amount of $322,000.00. The promissory note has been duly endorsed.

Select Portfolio Servicing, Inc. is the servicer of the loan described in the Note and Mortgage and, as such, has the authority to initiate the instant action and any foreclosure on the Creditor's behalf.

4.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain mortgage payments that have come due. As of July 15, 2026, the arrearage owed to Movant is $35,226.62 and consists of five (5) monthly mortgage payments at $4,130.10 each, and four (4) monthly mortgage payments at $3,644.03 each. An additional payment will come due August 1, 2026 and on the first day of each month thereafter until the loan is paid in full.

5.

The current unpaid principal balance due under the loan documents is approximately $319,220.87. The Property is most recently valued at $423,958.00 by the

Spalding County Tax Assessor's Office.

6.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

7.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

8.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(4) be waived;

(d) That Movant be permitted to offer and provide Debtor with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor.

(e) For such other and further relief the Court deems just and proper.

Date:07/27/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith_
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE:<br>**JTN Property LLC,**<br><br>Debtor. | :<br>:<br>:<br>:<br>:<br>: | CASE NO. 26-58791-sms<br>CHAPTER 7 |
| **Select Portfolio Servicing Inc., as Servicing agent for Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware statutory trust**,<br><br>Movant,<br>v.<br><br>**JTN Property LLC**,<br>**Debtor.**<br>**Kyle A. Cooper**,<br>**Trustee.**<br><br>Respondents. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br>CONTESTED MATTER |

**<u>Certificate of Service</u>**

I hereby certify that on the ***27th*** day of ***July 2026*** I electronically filed the foregoing ***Motion for Relief from Stay and Notice of Hearing*** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Kyle A. Cooper
Chapter 7 Trustee

I further certify that on this day I caused a copy of this document to be served via ***United States First Class Mail,*** on the following parties at the address shown for each.

JTN Property LLC
950 Eagles Landing Parkway
P.O. Box 767
Stockbridge, GA 30281

***U.S. Trustee***
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Dated: 07/27/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith_
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

# SUPPORTING DOCUMENTS

Loan No [redacted]

# TERM NOTE

**October 7, 2021**

**$322,000.00**

For value received, the undersigned **JTN Property LLC, a Georgia limited liability company** (the "Borrower"), promises to pay to the order of Visio Financial Services Inc. (together with its successors and assigns, the "Lender"), the principal amount of **Three Hundred Twenty-Two Thousand Dollars and Zero Cents ($322,000.00)** on or before **November 1, 2051** (the "Maturity Date"), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. The Borrower shall pay consecutive monthly installments of principal and interest, as follows: **$1,899.61** commencing on **December 1, 2021**, and the same amount (except the last installment which shall be the unpaid balance) on the 1st day of each month thereafter. The aggregate principal balance outstanding shall bear interest thereon at a per annum rate equal to **Five and Eighty-Five Hundredths Percent** (**5.85**%).

The calculation of the payment amount is based on a **360** month amortization period.

Principal and interest shall be payable at the Lender's main office or at such other place as the Lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated monthly on the basis of a 360-day year based on twelve (12) thirty (30) day months except that interest due and payable for a period of less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360-day year.

This Note may be prepaid in whole or in part upon thirty (30) days prior written notice to the Lender. In the event of any prepayment of this Note, whether by voluntary prepayment, acceleration or otherwise, the Borrower shall, at the option of the Lender, pay a "fixed rate prepayment charge" equal to the product of: (a) the principal amount prepaid and (b) the percentage set forth in the table below for any prepayment made during the indicated period.

| Period | Percentage |
|---|---|
| October 7, 2021 - October 6, 2022 | 5% |
| October 7, 2022 - October 6, 2023 | 4% |
| October 7, 2023 - October 6, 2024 | 3% |
| October 7, 2024 - October 6, 2025 | 2% |
| October 7, 2025 - October 6, 2026 | 1% |

After the last period indicated in the above table this Note may be prepaid in whole or in part without any prepayment charge.

At the option of the Lender, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an "Event of Default"): (1) default of any liability, obligation, covenant or undertaking of the Borrower, any endorser or any guarantor hereof to the Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower, any endorser or any guarantor hereof under any other loan document delivered by the Borrower, any endorser or any guarantor, or in connection with the loan evidenced by this Note or any other agreement by the Borrower, any endorser or any guarantor with the Lender; (2) failure of the Borrower, any endorser or any guarantor

hereof to maintain aggregate collateral security value satisfactory to the Lender; (3) default of any material liability, obligation or undertaking of the Borrower, any endorser or any guarantor hereof to any other party; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower, any endorser or any guarantor hereof in connection with the loan evidenced by this Note or in any supporting financial statement of the Borrower, any endorser or any guarantor hereof shall be determined by the Lender to have been false or misleading in any material respect when made; (5) if the Borrower, any endorser or any guarantor hereof is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or the division of such organization into one or more entities, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower, any endorser or any guarantor hereof and, if the Borrower, any endorser or any guarantor hereof is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower, any endorser or any guarantor hereof of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Borrower, any endorser or any guarantor hereof is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower, any endorser or any guarantor hereof of an assignment for the benefit of creditors or the granting by the Borrower, any endorser or any guarantor hereof of a trust mortgage for the benefit of creditors; (8) the service upon the Lender of a writ in which the Lender is named as trustee of the Borrower, any endorser or any guarantor hereof; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower, any endorser or any guarantor hereof, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien) except as permitted under any of the other loan documents between the Lender and the Borrower, seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower, any endorser or any guarantor hereof; (11) the termination or revocation of any guaranty hereof; or (12) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower, any endorser or any guarantor hereof, or the occurrence of any other event or circumstance, such that the Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower, any endorser or any guarantor hereof to the Lender has been or may be impaired.

Any payments received by the Lender on account of this Note shall, at the Lender's option, be applied first, to any costs, expenses or charges then owed to the Lender by the Borrower (including without limitation reasonable attorney's fees); second, to accrued and unpaid interest; third, to the unpaid principal balance hereof; and the balance to escrows, if any. Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as the Lender may determine. The Borrower hereby authorizes the Lender to charge any deposit account which the Borrower may maintain with the Lender for any payment required hereunder without prior notice to the Borrower.

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

**The Borrower represents to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.**

The Borrower and each endorser and guarantor hereof grant to the Lender a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from the Lender to the Borrower and/or each endorser or guarantor hereof and any cash, securities, instruments or other property of the Borrower and each endorser and guarantor hereof in the possession of the Lender, whether for safekeeping or otherwise, or in transit to or from the Lender (regardless of the reason the Lender had

received the same or whether the Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower and/or any endorser or guarantor hereof to the Lender and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower or any endorser or guarantor hereof to the Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Lender.

No delay or omission on the part of the Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Lender, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Borrower and every endorser or guarantor of this Note, regardless of the time, order or place of signing, waive presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waives all recourse to suretyship and guarantor defenses generally, including any defense based on impairment of collateral. To the maximum extent permitted by law, the Borrower and each endorser and guarantor of this Note waive and terminate any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead laws, including without limitation, O.C.G.A. Section 44-13-1.

The Borrower and each endorser and guarantor of this Note shall indemnify, defend and hold the Lender and its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless against any claim brought or threatened against any Indemnitee by the Borrower, by any endorser or guarantor, or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Lender's relationship with the Borrower or any endorser or guarantor hereof (each of which may be defended, compromised, settled or pursued by the Lender with counsel of the Lender's selection, but at the expense of the Borrower and any endorser and/or guarantor), except for any claim arising out of the gross negligence or willful misconduct of the Lender.

The Borrower and each endorser and guarantor of this Note agree to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 4.0% plus the rate provided for herein. If any payment due under this Note is unpaid for 15 days or more, the Borrower shall pay, in addition to any other sums due under this Note (and without limiting the Lender's other remedies on account thereof), a late charge equal to 5.0% of such unpaid amount.

This Note shall be binding upon the Borrower and each endorser and guarantor hereof and upon their respective heirs, successors, assigns and legal representatives, and shall inure to the benefit of the Lender and its successors, endorsees and assigns.

The liabilities of the Borrower and each Borrower, if more than one, and any endorser or guarantor of this Note are joint and several; provided, however, the release by the Lender of the Borrower or any one or more endorsers or guarantors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any endorser or guarantor of this Note are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to the Lender. Each reference in this Note to the Borrower and each Borrower, if more than one, and endorser or guarantor of this Note, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to the Lender of the person from whom contribution is sought have been irrevocably satisfied in full. The release or compromise by the Lender of any collateral shall not release any person obligated on account of this Note.

The Borrower and each endorser and guarantor hereof each authorizes the Lender to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by the Lender, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

This Note shall be governed by the laws of the State of Georgia.

Any notices under or pursuant to this Note shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Lender at the address set forth in this Note or as any party may from time to time designate by written notice to the other party.

**THE BORROWER AND EACH ENDORSER AND GUARANTOR OF THIS NOTE EACH IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT SITTING IN GEORGIA, OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE. EACH OF THE BORROWER AND EACH ENDORSER AND GUARANTOR IRREVOCABLY WAIVES, TO THE FULLEST EXTENT IT MAY EFFECTIVELY DO SO UNDER APPLICABLE LAW, ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT AND ANY CLAIM THAT THE SAME HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. EACH OF THE BORROWER AND EACH ENDORSER AND GUARANTOR HEREBY CONSENTS TO ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING, (I) BY MAILING A COPY THEREOF BY REGISTERED AND CERTIFIED MAIL, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO THE BORROWER'S, ENDORSER'S OR GUARANTOR'S ADDRESS SHOWN BELOW OR AS NOTIFIED TO THE LENDER AND (II) BY SERVING THE SAME UPON THE BORROWER(S), ENDORSER(S) OR GUARANTOR(S) IN ANY OTHER MANNER OTHERWISE PERMITTED BY LAW, AND AGREES THAT SUCH SERVICE SHALL IN EVERY RESPECT BE DEEMED EFFECTIVE SERVICE UPON THE BORROWER OR SUCH ENDORSER OR GUARANTOR.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER, EACH ENDORSER AND GUARANTOR TO THE LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER, EACH ENDORSER AND GUARANTOR AND THE LENDER EACH CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

Executed as an instrument under seal as of **October 7, 2021.**

Loan No [redacted]

Borrower:

JTN Property LLC

By: Napoleon Sanders, Manager

950 Eagles Landing Pkwy #767
Stockbridge, Georgia
30281



 © 2021 Medici, a division of Wolters Kluwer Financial Services

Loan Number: [redacted]

Borrower: JTN Property LLC

# NOTE ALLONGE

This Note Allonge refers to the Note described herein.

Note Date: 10/7/2021

Note Amount: $322,000.00

Executed by: Napoleon Sanders, Manager of JTN Property LLC

Original Lender: Visio Financial Services Inc.

Property Address: 623 E Solomon St, Griffin, GA 30223

Pay to the Order of

________________________________

Without Recourse

Visio Financial Services Inc.

By: ________________________________

Yi Hubert
Corporate Controller

eFiled & eRecorded
DATE: 10/27/2021
TIME: 2:55 PM
DEED BOOK: 04855
PAGE: 00100 - 00116
RECORDING FEES: $25.00
INTANGIBLE TAX: $966.00
PARTICIPANT ID: [redacted]
CLERK: Debbie L. Brooks
Spalding County, GA

COPY
w/o original

Space Above This Line for Recorder's Use

This instrument prepared by and when recorded counterparts should be returned to:
Visio Financial Services Inc.
Attention: Brooke Casas
Visio Loan No [redacted]
1905 Kramer Ln. Ste. B700
Austin, Texas 78758

STATE OF Georgia

COUNTY OFSPALDING

## DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS

This DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this "Deed to Secure Debt") is entered into as of **October 7, 2021**, between **JTN Property LLC**, a **Georgia** limited liability company, with an address of **950 Eagles Landing Pkwy #767, Stockbridge, Georgia 30281** (the "Grantor") and Visio Financial Services Inc., a Lender, with an address of 1905 Kramer Ln. Ste. B700, Austin, Texas 78758 (the "Grantee").

The real property which is the subject matter of this Deed to Secure Debt has the following address(es): **623 E Solomon St, Griffin, Georgia 30223** (the "Address(es)").

### 1. DEED TO SECURE DEBT, OBLIGATIONS AND FUTURE ADVANCES

1.1 Deed to Secure Debt. For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to the Grantee and its successors and assigns, in fee simple forever, all of Grantor's right, title

**Return To:**
Fidelity National Title Group
3301 Windy Ridge Parkway, Suite 300
Atlanta, GA 30339
Attn: Kim Hogan- **211967GA**

Loan No [redacted]

and interest in and to the "Property" described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to the Grantee and all obligations respecting that certain **Term Note**, dated **October 7, 2021**, by **JTN Property LLC** in favor of the Grantee in the original principal amount of **$322,000.00** with a maturity date of **November 1, 2051** (the "Note"; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the "Loan Documents"), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

The amount of principal obligations outstanding and evidenced by the Loan Documents and secured by this Deed to Secure Debt total **$322,000.00** as of the date of this Deed to Secure Debt.

1.2 Security Interest in Property. As continuing security for the Obligations the Grantor hereby pledges, assigns and grants to the Grantee, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Deed to Secure Debt is and shall be deemed to be a security agreement pursuant to the terms of the Uniform Commercial Code of Georgia (the "Uniform Commercial Code") as to any and all personal property and fixtures and as to all such property the Grantee shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder.

1.3 Collateral Assignment of Leases and Rents. The Grantor hereby irrevocably and unconditionally assigns to the Grantee, and its successors and assigns, as collateral security for the Obligations all of the Grantor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Grantor shall have a license, revocable by the Grantee, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and the Grantee exercises its rights and remedies to collect such rents as set forth herein.

1.4 Conditions to Grant. The Trustee shall have and hold the above granted Property unto and to the use and benefit of the Grantee, and its successors and assigns, in fee simple forever; provided, however, the conveyances, grants and assignments contained in this Deed to Secure Debt are upon the express condition that, if Grantor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents and this Deed to Secure Debt, shall pay and perform all other Obligations as set forth in this Deed to Secure Debt and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the Grantee shall execute and deliver to Grantor a cancellation of this Deed to Secure Debt in recordable form.

1.5 Property. The term "Property," as used in this Deed to Secure Debt, shall mean that certain parcel of land and the fixtures, structures and improvements and all personal property constituting fixtures, as that term is defined in the Uniform Commercial Code, now or hereafter thereon located at the Address(es), as more particularly described in Exhibit "A" attached hereto, together with: (i) all rights now or hereafter existing, belonging, pertaining or appurtenant thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Grantor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined; (iv) all of the rights and benefits of the Grantor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof together with any extensions and renewals

thereof, specifically excluding all duties or obligations of the Grantor of any kind arising thereunder (the "Leases"); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property, as well as, all impact fees with, or impact fee payments to, any governmental authority, all development rights and utility capacity allocations related to the Property.

1.6 Obligations. The term "Obligation(s)," as used in this Deed to Secure Debt, shall mean without limitations the principal of, interest on, and all other amounts due at any time under the Note, the Loan Agreement, this Deed to Secure Debt or any other Loan Document (other than the environmental indemnity and guaranty), including prepayment premiums, late charges, interest charged at the default rate, and accrued interest as provided in the Loan Agreement and this Deed to Secure Debt, advances, costs and expenses to perform the obligations of Borrower or to protect the mortgaged property or the security of this Deed to Secure Debt, all other monetary obligations of Borrower under the Loan Documents (other than the environmental indemnity), including amounts due as a result of any indemnification obligations, and any enforcement costs.

1.7 Conveyance. This conveyance is intended to operate as and is to be construed as a deed passing the title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt (including, e.g., O.C.G.A. §44-14-60), and not as a mortgage, and is given to secure the payment and performance of the Obligations.

## 2. REPRESENTATIONS, WARRANTIES, COVENANTS

2.1 Representations and Warranties. The Grantor represents and warrants that:

(a) This Deed to Secure Debt has been duly executed and delivered by the Grantor and is the legal, valid and binding obligation of the Grantor enforceable in accordance with its terms, except as limited by Bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

(b) The Grantor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit "B" hereto (the "Permitted Encumbrances"), that the Grantor is lawfully seized and possessed of the property, that the Grantor has the right to encumber the Property, that the Property is unencumbered except by the Permitted Encumbrances, and that the Grantor shall forever warrant and defend the title to the Property unto the Grantee against the claims of all persons whomsoever (other than Permitted Encumbrances);

(c) The Grantor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Grantor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(d) As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by the Grantee; and

(e) Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

2.2 Recording; Further Assurances. The Grantor covenants that it shall, at its sole cost and expense and upon the request of the Grantee, cause this Deed to Secure Debt, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of the Grantee in the Property and the rights of the Grantee under this Deed to Secure Debt. Grantor will from time to time execute and deliver to the Grantee such documents,

and take or cause to be taken, all such other or further action, as the Grantee may request in order to effect and confirm or vest more securely in the Grantee all rights contemplated by this Deed to Secure Debt (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to the Grantee the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Grantor authorizes the Grantee to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. The Grantee may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Deed to Secure Debt and which contain any other information required by Article 9 of the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Grantor is an organization, the type of organization and any organization identification number issued to Grantor; Grantor also authorizes the Grantee to file financing statements describing any agricultural liens or other statutory liens held by the Grantee. Grantor agrees to furnish any such information to the Grantee promptly upon request. In addition, Grantor shall at any time and from time to time, take such steps as the Grantee may reasonably request for the Grantee (i) to obtain an acknowledgment, in form and substance satisfactory to the Grantee, of any bailee having possession of any of the Property that the bailee holds such Property for the Grantee, and (ii) otherwise to insure the continued perfection and priority of the Grantee's security interest in any of the Property and the preservation of its rights therein. Grantor hereby constitutes the Grantee its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Deed to Secure Debt terminates in accordance with its terms, all Obligations are paid in full and the Property is released.

2.3 Restrictions on the Grantor. The Grantor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of the Grantee in each instance:

(a) Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Grantor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Deed to Secure Debt;

(b) Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule ("Hazardous Substances"); or

(c) Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Grantor further agrees to give the Grantee prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Grantor agrees to defend its title to the Property and the Grantee's interest therein against the claims of all persons and, unless the Grantee requests otherwise, to appear in and diligently contest, at the Grantor's sole cost and expense, any action or proceeding that purports to affect the Grantor's title to the Property or the priority or validity of this Deed to Secure Debt or the Grantee's interest hereunder.

2.4 Operation of Property. The Grantor covenants and agrees as follows:

(a) The Grantor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Grantor, the

Property or the use thereof, including without limitation, any applicable zoning [redacted] codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to the Grantee of (i) any violation of any such law, ordinance or regulation by the Grantor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(b) The Grantor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which the Grantee may require, provided that, in any case, the Grantor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property of loan amount; (ii) flood insurance if and as required by applicable Federal law and as otherwise required by the Grantee; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as the Grantee may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to the Grantee, provide deductible amounts acceptable to the Grantee, name the Grantee as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least thirty (30) days prior written notice to the Grantee. Such policies shall include (i) a mortgage endorsement determined by the Grantee in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of the Grantee, shall not be invalidated by any act or neglect of the Grantor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as the Grantee may request. The Grantor will furnish to the Grantee upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to the Grantee. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Grantor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(c) Reserved;

(d) Grantor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit the Grantee and the Grantee's agents, employees and representatives, at such reasonable times as the Grantee may request, to enter and inspect the Property and such books and records;

(e) Grantor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof; and

(f) Grantor shall not use or occupy the Property in any manner that would constitute a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. In the event that Grantor becomes aware of such a violation, Grantor shall take all actions allowed by law to terminate the violating activity. Violation of this paragraph is a material breach of this agreement and constitutes an Event of Default.

2.5 <u>Payments</u>. The Grantor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates,

sewer charges, insurance premiums and other charges on the Property, this Deed to Secure Debt or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by the Grantee, the Grantor shall deposit from time to time with the Grantee sums determined by the Grantee to be sufficient to pay when due the amounts referred to in this Section. The Grantor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at the Grantee's request, provides the Grantee with adequate cash security, in the Grantee's reasonable judgment, against the enforcement thereof. The Grantor shall furnish to the Grantee the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Grantor shall also furnish to the Grantee evidence of all other payments referred to above within fifteen (15) days after written request therefor by the Grantee. If Grantor shall fail to pay such sums, the Grantee may, but shall not be obligated to, advance such sums. Any sums so advanced by the Grantee shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Deed to Secure Debt.

2.6 Notices; Notice of Default. The Grantor will deliver to the Grantee, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Grantor is in default in the performance or observance of any of the terms hereof or that the Grantor or any tenant is in default of any terms of the Leases. The Grantor further agrees to deliver to the Grantee written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

2.7 Takings. In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a "Taking"), or the commencement of any proceedings or negotiations that might result in a Taking, the Grantor shall immediately give written notice to the Grantee, describing the nature and extent thereof. The Grantee may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Grantor shall immediately give to the Grantee copies of all notices, pleadings, determinations and other papers relating thereto. The Grantor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Grantor shall not settle any such claim without the Grantee's prior written consent. The Grantor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for the Grantee and immediately pay the same to the Grantee. The Grantor authorizes any award or settlement due in connection with a Taking to be paid directly to the Grantee in amounts not exceeding the Obligations. The Grantee may apply such amounts to the Obligations in such order as the Grantee may determine.

2.8 Insurance Proceeds. The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to the Grantee and, at the option of the Grantee, be applied to the Obligations in such order as the Grantee may determine; provided, however, that if the Grantee shall require repair of the Property, the Grantee may release all or any portion of such proceeds to the Grantor for such purpose. Any insurance proceeds paid to the Grantor shall be held in trust for the Grantee and promptly paid to it.

## 3. CERTAIN RIGHTS OF THE GRANTEE

3.1 Legal Proceedings. The Grantee shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in the Grantee's reasonable judgment, might affect the Property or any of the rights created or secured by this Deed to Secure Debt. The Grantee shall have such right whether or not there shall have occurred an Event of Default hereunder.

3.2 Appraisals/Assessments. The Grantee shall have the right, at the Grantor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the

Property that are real estate at such times as the Grantee deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

3.3 Financial Statements. The Grantee shall have the right, at the Grantor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to the Grantee from the Grantor or any guarantor of any of the Obligations and the Grantor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by the Grantee.

3.4 Tax Return. Grantor shall provide the Grantee with copies of Grantor's filed Federal and state tax returns for the prior year within ninety (90) days after the date that Grantor's tax returns are required to be filed.

3.5 Leases and Rent Roll. The Grantor shall deliver to the Grantee (i) during each calendar year and at such other times as the Grantee shall request a rent roll for the Property, in form acceptable to the Grantee, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as the Grantee shall request executed copies of all the Leases.

## 4. DEFAULTS AND REMEDIES

4.1 Events of Default. "Event of Default" shall mean the occurrence of any one or more of the following events:

(a) default of any liability, obligation, covenant or undertaking of the Grantor or any guarantor of the Obligations to the Grantee, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Grantor or any guarantor of the Obligations under any other Loan Document or any other agreement with the Grantee;

(b) failure by the Grantor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Deed to Secure Debt or the Loan Documents;

(c) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(d) failure of the Grantor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Grantee;

(e) default of any material liability, obligation or undertaking of the Grantor or any guarantor of the Obligations to any other party;

(f) if any statement, representation or warranty heretofore, now or hereafter made by the Grantor or any guarantor of the Obligations in connection with this Deed to Secure Debt or in any supporting financial statement of the Grantor or any guarantor of the Obligations shall be determined by the Grantee to have been false or misleading in any material respect when made;

(g) if the Grantor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or the division of such organization into one or more entities, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

eFiled & eRecorded
DATE: 10/27/2021
TIME: 2:55 PM
DEED BOOK: 04855
PAGE: 00107



(h) the death of the Grantor or any guarantor of the Obligations and, if the Grant[redacted] guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(i) the institution by or against the Grantor or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Grantor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Grantor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Grantor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(j) the service upon the Grantee of a writ in which the Grantee is named as trustee of the Grantor or any guarantor of the Obligations;

(k) a judgment or judgments for the payment of money shall be rendered against the Grantor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(l) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Grantor or any guarantor of the Obligations;

(m) the termination or revocation of any guaranty of the Obligations; or

(n) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Grantor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Grantee, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Grantor or any guarantor of the Obligations to the Grantee has been or may be impaired.

4.2 Remedies. On the occurrence of any Event of Default the Grantee may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(a) Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Grantor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an event of default has occurred hereunder;

(b) Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Grantor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by the Grantee upon the Property for any reason shall not cause the Grantee to be a mortgagee in possession, except upon the express written declaration of the Grantee;

(c) With or without taking possession, receive and collect all rents, income, issues and profits ("Rents") from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Grantor appoints the Grantee as its true and lawful attorney with the power for the Grantee in its own name and capacity to demand and collect Rents and take any action that the Grantor is authorized to take under the Leases. The Grantee shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as the

Grantee determines, or in accordance with any applicable statute, and the Grantor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. The Grantee shall be liable to account only for such Rents actually received by the Grantee. Lessees under the Leases are hereby authorized and directed, following notice from the Grantee, to pay all amounts due the Grantor under the Leases to the Grantee, whereupon such lessees shall be relieved of any and all duty and obligation to the Grantor with respect to such payments so made;

(d) In addition to any other remedies, to sell the Property or any part thereof or interest therein pursuant to exercise of its power of sale or otherwise at public auction on terms and conditions as the Grantee may determine, or otherwise foreclose this Deed to Secure Debt in any manner permitted by law, and upon such sale the Grantor shall execute and deliver such instruments as the Grantee may request in order to convey and transfer all of the Grantor's interest in the Property, and the same shall operate to divest all rights, title and interest of the Grantor in and to the Property. In the event this Deed to Secure Debt shall include more than one parcel of property or subdivision (each hereinafter called a "portion"), the Grantee shall, in its sole and exclusive discretion and to the extent permitted by applicable law, be empowered to foreclose upon any such portion without impairing its right to foreclose subsequently upon any other portion or the entirety of the Property from time to time thereafter. In addition, the Grantee may in its sole and exclusive discretion subordinate this Deed to Secure Debt to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(e) Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Grantor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Grantor shall provide the Grantee or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Grantor from any responsibility therefor or given the Grantee "control" over the Property or cause the Grantee to be considered to be a mortgagee, in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(f) Take such other actions or proceedings as the Grantee deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Grantor hereby waives any right to object to such appointment) and exercise of any of the Grantee's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the Uniform Commercial Code or under other applicable law.

In addition, the Grantee shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

The Grantor agrees and acknowledges that the acceptance by the Grantee of any payments from either the Grantor or any guarantor after the occurrence of any Event of Default, the exercise by the Grantee of any remedy set forth herein or the commencement, discontinuance or abandonment of foreclosure proceedings against the Property shall not waive the Grantee subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Grantee. The Grantor agrees and acknowledges that the Grantee, by making payments or incurring costs described herein, shall be subrogated to any right of the Grantor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Grantor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of

Hazardous Substances.

4.3 Sale Under Power. (a) Notwithstanding anything to the contrary contained elsewhere in this Deed to Secure Debt, if an Event of Default shall occur, the Grantee, at its option, without notice or demand and without impairing or otherwise affecting the other rights and remedies of Grantee, may sell, and is hereby authorized and empowered to sell, the Property or any part of the Property at one or more public sales at the door of the courthouse in the county where the real estate is located, to the highest bidder for cash, in order to pay the Obligations involving, without limitation, all expenses of sale and of all proceedings in connection therewith, including reasonable attorney's fees, in bar of the right and equity of redemption, if any, homestead, and all other rights and exemptions of every kind, if any (including, without limitation, all rights under any appraisement, valuation, stay or extension laws and all rights to have the Property marshalled upon foreclosure hereof), which may now or hereafter exist, all of which are hereby expressly waived by Grantor, after first advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in the county where the real estate is located, all other notice being hereby waived by Grantor. At such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, and with full warranties of title, and to this end Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title and equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed, and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for the collection of the indebtedness secured hereby, and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the secured indebtedness. In the event of any sale under this Deed to Secure Debt by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its discretion may elect, and, if Grantee so elects, Grantee may sell the personal property covered by this Deed to Secure Debt concurrently with the real property covered hereby or at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Property is sold or the Obligations are paid in full. If the Obligations are now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other deeds to secure debt, Grantee may at its option exhaust the remedies granted under any of said security either concurrently or independently, and in such order as Grantee may determine in its discretion.

(b) Upon a sale of all or any portion of the Property under the power of sale herein granted, the proceeds of said sale, together with any other sums which then may be held by Grantee under this Deed to Secure Debt, shall be applied, in whatever order Grantee in its sole discretion may decide, to the obligations involving the expenses of such sale and of all proceedings in connection therewith (including, without limitation, reasonable attorneys' fees), including, without limitation, insurance premiums, liens, assessments, taxes and charges (including, without limitation, utility charges advanced by Grantee), and accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Grantor, or to the person or entity lawfully entitled thereto.

(c) Upon any foreclosure sale, Grantee may bid for and purchase the Property and shall be entitled to apply all or any part of the Obligations as a credit to the purchase price. In the event of any such foreclosure sale by Grantee, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

(d) In case Grantee shall have proceeded to enforce any right, power, or remedy under this Deed to Secure Debt by foreclosure, entry or otherwise or in the event advertising of the intended exercise of the sale under power provided hereunder is commenced, and such proceeding or advertisement shall

eFiled & eRecorded
DATE: 10/27/2021
TIME: 2:55 PM
DEED BOOK: 04855
PAGE: 00110



have been withdrawn, discontinued or abandoned for any reason, then in every such case (i) Grantor and Grantee shall be restored to their former positions and rights, (ii) all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken, (iii) each and every default declared or occurring prior or subsequent to such withdrawal, discontinuance or abandonment shall be deemed to be a continuing default, and (iv) neither this Deed to Secure Debt, nor the Note, nor the obligations, nor any other Loan Document shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and Grantor hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with this sentence.

4.4 Intent of Conveyance. This conveyance is intended to operate and is to be construed as (i) a security agreement as required under the Uniform Commercial Code of the State of Georgia and (ii) a deed passing the title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the Obligations, any and all additional advances made by Grantee to protect or preserve the Property or the lien or security title hereof on the Property, or for taxes, assessments or insurance premiums as herein provided (whether or not the original Grantor remains the owner of the Property at the time of such advances), and any and all other sums owed by Grantor to Grantee hereunder, under the Note, or under any of the other Loan Documents. Accordingly, all references herein to the "lien of this deed", and words of similar import shall be deemed to refer to "the security title and Deed to Secure Debt created by this deed", and all references herein to the "mortgaging" of property, or words of similar import, shall be deemed to refer to "the granting of security title and Deed to Secure Debt" in such property. Should the Obligations secured by this Deed to Secure Debt be paid according to the tenor and effect thereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Deed to Secure Debt shall be canceled and surrendered.

4.5 Advances. If the Grantor fails to pay or perform any of its obligations respecting the Property, the Grantee may in its sole discretion do so without waiving or releasing Grantor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by the Grantee hereunder shall be, until reimbursed by the Grantor, part of the Obligations and secured by this Deed to Secure Debt, and shall be due and payable to the Grantee, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

4.6 Cumulative Rights and Remedies. All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights the Grantee might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Grantor further agrees that the Grantee may exercise any or all of its rights or remedies set forth herein without having to pay the Grantor any sums for use or occupancy of the Property.

4.7 Grantor's Waiver of Certain Rights. To the extent permitted by applicable law, the Grantor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.

## 5. MISCELLANEOUS

5.1 Costs and Expenses. To the extent permitted by applicable law, the Grantor shall pay to the Grantee, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Grantee in connection with the Grantee's interpretation, recordation of this Deed to Secure Debt, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Deed to

eFiled & eRecorded
DATE: 10/27/2021
TIME: 2:55 PM
DEED BOOK: 04855
PAGE: 00111



Secure Debt and in connection with any litigation, proceeding or dispute whether arising [redacted] otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Grantor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Grantor hereunder shall be, until paid, part of the Obligations and secured by this Deed to Secure Debt, and the Grantee shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Grantor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

5.2 Limit on Interest. If from any circumstances whatsoever, fulfillment of any provision of this Deed to Secure Debt, any Note or any other Loan Document, at the time performance of such provision becomes due, would exceed the limit on interest then permitted by any applicable usury statute or any other applicable law, the Grantee may, at its option (a) reduce the Obligations to be fulfilled to such limit on interest, or (b) apply the amount in excess of such limit on interest to the reduction of the outstanding principal balance of the Obligations, and not to the payment of interest, with the same force and effect as though Grantor had specifically designated such sums to be so applied to principal and Grantee had agreed to accept such extra payments(s) as a premium-free prepayment, so that in no event shall any exaction be possible under this Deed to Secure Debt or any other Loan Document that is in excess of the applicable limit on interest. It is the intention of Grantor and Grantee that the total liability for payments in the nature of interest shall not exceed the limits imposed by any applicable state or federal interest rate laws. The provisions of this Section shall control every other provision of this Deed to Secure Debt, and any provision of any other Loan Document in conflict with this Section.

5.3 Indemnification Regarding Leases. The Grantor hereby agrees to defend, and does hereby indemnify and hold the Grantee and each of its directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of the Grantee to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon the Grantee or any Indemnitee or make them liable for performance of any of the obligations of the Grantor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

5.4 Indemnification Regarding Hazardous Substances. The Grantor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Grantor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Deed to Secure Debt and/or the repayment of all debts to the Grantee including repayment of all Obligations.

5.5 Indemnitee's Expenses. If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Deed to Secure Debt or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Grantor or other person or entity, then the Grantor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Grantee in favor of the Grantor.

5.6 Waivers. The Grantor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature

[redacted]

thereof. No delay or omission of the Grantee in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as "the Grantee's rights and remedies") hereunder shall constitute a waiver thereof; and no waiver by the Grantee of any default of the Grantor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of the Grantee, which consent makes explicit reference to this Deed to Secure Debt. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between the Grantee and the Grantor at any time (whether before, during or after the effective date or term of this Deed to Secure Debt) shall be construed as a waiver, modification or limitation of any of the Grantee's rights and remedies under this Deed to Secure Debt (nor shall anything in this Deed to Secure Debt be construed as a waiver, modification or limitation of any of the Grantee's rights and remedies under any such other agreement or transaction) but all the Grantee's rights and remedies not only under the provisions of this Deed to Secure Debt but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Grantee at such time or times and in such order of preference as the Grantee in its sole discretion may determine.

5.7 Waiver of Homestead. To the maximum extent permitted under applicable law, the Grantor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, O.C.G.A. Section 44-13-1.

5.8 Joint and Several. If there is more than one Grantor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Deed to Secure Debt and the term "Grantor" shall include each as well as all of them.

5.9 Severability. If any provision of this Deed to Secure Debt or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Deed to Secure Debt (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

5.10 Complete Agreement. This Deed to Secure Debt and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

5.11 Binding Effect of Agreement. This Deed to Secure Debt shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Grantee shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. The Grantee may transfer and assign this Deed to Secure Debt and deliver any collateral to the assignee, who shall thereupon have all of the rights of the Grantee; and the Grantee shall then be relieved and discharged of any responsibility or liability with respect to this Deed to Secure Debt and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Deed to Secure Debt or the other Loan Documents.

5.12 Notices. Any notices under or pursuant to this Deed to Secure Debt shall be deemed duly received and effective if delivered in hand to any officer or agent of the Grantor or Grantee, delivered via a nationally recognized overnight carrier or if mailed by registered or certified mail, return receipt requested, addressed to the Grantor or Grantee at the address set forth in this Deed to Secure Debt or as any party may from time to time designate by written notice to the other party.

5.13 Governing Law. This Deed to Secure Debt shall be governed by the laws of the State of Georgia.

[redacted]

5.14 Reproductions. This Deed to Secure Debt and all documents which have been or may be hereinafter furnished by the Grantor to the Grantee may be reproduced by the Grantee by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

5.15 **JURISDICTION AND VENUE. THE GRANTOR IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT SITTING IN GEORGIA, OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS DEED TO SECURE DEBT. THE GRANTOR IRREVOCABLY WAIVES, TO THE FULLEST EXTENT IT MAY EFFECTIVELY DO SO UNDER APPLICABLE LAW, ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT AND ANY CLAIM THAT THE SAME HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. THE GRANTOR HEREBY CONSENTS TO PROCESS BEING SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING (I) BY THE MAILING OF A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO THE GRANTOR'S ADDRESS SET FORTH HEREIN OR SUCH OTHER ADDRESS AS HAS BEEN PROVIDED IN WRITING TO THE GRANTEE AND (II) IN ANY OTHER MANNER PERMITTED BY LAW, AND AGREES THAT SUCH SERVICE SHALL IN EVERY RESPECT BE DEEMED EFFECTIVE SERVICE UPON THE GRANTOR.**

5.16 Non Residential Status of Property. Grantor represents and warrants to Grantee that neither all of the Property nor any part thereof is to be used as a dwelling place by Grantor at the time this Deed to Secure Debt is entered into, and accordingly, the notice requirements of O.C.G.A. §44-14-162.2 shall not be applicable to any exercise of the power of sale contained in this Deed to Secured Debt.

5.17 Commercial Transaction. The interest of Grantee under this Deed to Secure Debt and the liability and obligation of Grantor for the payment of the Obligations arise from a "commercial transaction" within the meaning of O.C.G.A §44-14-260(1). Accordingly, pursuant to O.C.G.A. §44-14-263, Grantor waives any and all rights which Grantor may have to notice prior to seizure by Grantee of any interest in personal property of Grantor which constitutes part of the Property, whether such seizure is by writ of possession or otherwise.

5.18 **JURY WAIVER. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE GRANTOR AND THE GRANTEE EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS DEED TO SECURE DEBT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. THE GRANTOR CERTIFIES THAT NEITHER THE GRANTEE NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE GRANTEE WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

5.19 **WAIVER OF GRANTOR'S RIGHTS. BY EXECUTION OF THIS DEED TO SECURE DEBT, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE OBLIGATIONS EVIDENCED BY THE NOTE AND THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED TO SECURE DEBT; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE**

[redacted]

SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED TO SECURE DEBT; (C) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED TO SECURE DEBT AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED TO SECURE DEBT AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR, AND GRANTOR HAS CONSULTED WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING AND INITIALING THIS DEED TO SECURE DEBT; (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (E) ACKNOWLEDGES THAT THE LOAN DOCUMENTS, THIS DEED TO SECURE DEBT AND ALL OF THE DOCUMENTS GIVEN IN CONNECTION THEREWITH ARE VALID, BINDING AND ENFORCEABLE IN ACCORDANCE WITH THEIR RESPECTIVE TERMS.

EXECUTED under seal as of the date first above written.

Witness:

[signature]
Michelle Jipgwor-Sanders

Grantor:
JTN Property LLC

By: [signature], Manager
Napoleon Sanders, Manager

Signed, sealed and delivered in the Presence of:

[signature]
Unofficial Witness Michelle Jipgwor-Sanders

[signature] Carr
Notary Public

State of Georgia

County of Henry

My Commission Expires:
7-11-2024

(NOTARIAL SEAL)

Freida Carr
NOTARY PUBLIC
Newton County, GEORGIA
My Commission Expires 07/11/2024





© 2021 Medici, a division of Wolters Kluwer Financial Services

eFiled & eRecorded
DATE: 10/27/2021
TIME: 2:55 PM
DEED BOOK: 04855
PAGE: 00115

[redacted]

**EXHIBIT "A"**

**Property Description**

All that lot, tract or parcel of land situate, lying and being in the City of Griffin, Spalding County, Georgia, and more particularly shown on a plat of survey entitled "Property of Mrs. Ruth G. Martin" dated January 8, 1965, prepared by John W. Oxford, Jr:, C. E., a copy of which said plat is recorded in Plat Book 9, Page 39 in the Office of the Clerk of the Superior Court of Spalding County, Georgia, and, by reference, said plat of survey is incorporated herein and made a part of this description, and, according to said plat of survey, said real property is more particularly described as follows:

Beginning at an iron stake located at the intersection of the North margin of East Solomon Street with the West margin of North First Street, and running thence, North 3 degrees 41 minutes East and along the West margin of North First Street 157.5 feet to an iron stake; thence, North 86 degrees 45 minutes West 105.5 feet to an iron stake; thence, South 3 degrees 41 minutes West 60.9 feet to an iron stake; thence, North 86 degrees 45 minutes West 50 feet to an iron stake on the East line of property now or formerly owned by Will Hill Newton; thence South 3 degrees 41 minutes West 96.6 feet and along the East line of property now or formerly owned by Will Hill Newton to a concrete monument located on the North margin of East Solomon Street; thence, South 86 degrees 45 minutes East and along the North margin of East Solomon Street 155.5 feet to an iron stake and Point of Beginning, and bounded on the North by property formerly owned by Eugene I. Hightower, now owned by Thelma laon Lemon, and by property of Newton Crouch; on the East by North First Street; on the South by East Solomon Street, and on t Will Hill Newton, now owned by Ruth G. Martin and by property of Newton Crouch.

eFiled & eRecorded
DATE: 10/27/2021
TIME: 2:55 PM
DEED BOOK: 04855
PAGE: 00116

[redacted]

**EXHIBIT "B"**

**Permitted Encumbrances**

None

E-Filed By:
Spalding County Clerks Office
Clerk of Courts Debbie L. Brooks
04/09/2026 04:07 PM
Deed Book: 05386
Page: 0474-0475
$25.00 Base Filing Fee

COPY

Recording Requested By/Return to:
This Instrument was prepared by: Stacie Wagner, Visio Financial Services Inc., 1905 Kramer Lane, #B700, Austin, TX 78758

**ASSIGNMENT OF DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS**

Loan No. [redacted]

KNOW ALL MEN BY THESE PRESENTS: THAT **VISIO FINANCIAL SERVICES INC.**, a Delaware corporation existing under the laws of the State of Delaware, residing or located at 1905 Kramer Lane, Ste. B700, in the City of Austin in the County of Travis and in the State of TX, herein designated as the Assignor, for and in consideration of the sum of ONE DOLLAR and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to ****See Attached**** residing or located at ****See Attached****, herein designated as the Assignee, a certain DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS dated 10/7/2021, made by JTN Property LLC, Trustee: N/A on real property located at

**623 E Solomon St, Griffin, GA 30223**
Parcel: 018 39011, Alternative Parcel, if applicable: N/A
County of **Spalding** and State of **GA**,

to secure payment of the sum of $322,000.00 which DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS is recorded in the Clerk's office of the County of Spalding in GA on 10/27/2021 in Instrument N/A, Book 04855, Page 00160.

TOGETHER with the Bond, Note or other Obligation therein described, and the money due and to grow due thereon, with the interest. TO HAVE AND TO HOLD the save unto the said Assignee forever, subject only to all the provisions contained in the said DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS and the Bond, Note or other Obligation. AND the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

AND the Assignor covenants that there is now due and owing the said DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS and the Bond, Note or other Obligation secured thereby, the sum of $322,000.00 principal with interest thereon to be computed at the rate of 5.850 % per year from 10/7/2021, and there are no set-offs, counter claims or defenses against the same, in law or in equity, nor have there been any modifications or other changes in the original terms thereof, other than as stated herein.

In all references herein to any parties, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of DEED TO SECURE DEBT, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS on 10/7/2021.

Signed, Sealed and Delivered in the presence of or attested by:

VISIO FINANCIAL SERVICES INC.,
a Delaware Corporation

[signature]
By: Yi Hubert
As Its: Corporate Controller

STATE OF TEXAS
COUNTY OF TRAVIS
I certify that on 10/7/2021, Yi Hubert, personally came before me and stated to my satisfaction that this person was authorized to and did execute this instrument as Corporate Controller of Visio Financial Services Inc., a Delaware Corporation, the entity named in this instrument; and, executed this instrument as the act of the entity named in this instrument.

[signature]
NOTARY PUBLIC – Tandi Ann Haggard
My Commission Expires 05/22/2024

TANDI ANN HAGGARD
Notary Public, State of Texas
Comm. Expires 05-22-2024
Notary I[redacted]
NOTARY PUBLIC STATE OF TEXAS

E-Filed By: 04/09/2026 04:07 PM
Spalding County Clerks Office Deed Book: 05386
Clerk of Courts Debbie L. Brooks Page: 0475

**Attachment**

Assignee: Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware statutory trust

C/O Select Portfolio Servicing, Inc., 3217 S. Decker Lake Dr., Salt Lake City, UT 84119

SPS SELECT Portfolio SERVICING, inc.

**Financial Breakdown Statement**
Data date:07/15/2026 12:27:36PM
Loan Number: [redacted]

## Financial Breakdown Summary

**Borrower / Loan Information**

| | | | | | |
|---|---|---|---|---|---|
| Loan Number: | [redacted] | Loan Status: | BK7 | Interest Type: | FIXED |
| Borrower: | LLC, JTN PROPERTY | Due Date: | 11/01/2025 | Modified Date: | 01/28/2025 |
| Co-Borrower: | SANDERS, NAPOLEON | MI Coverage: | No | Restricted Escrow | $0.00 |
| Address: | 623 E SOLOMON ST | Acquisition Date: | 02/01/2022 | BK Case #: | 26-58791 |
| City: | GRIFFIN | Maturity Date: | 01/01/2065 | BK Chapter: | 07 |
| State: | GA | Stop Adv date: | MM/DD/YYYY | BK Filing Date: | 07/07/2026 |
| County: | Spalding | Last Payment Date: | 12/15/2025 | Prepared Date: | 07/15/2026 |

**Financial Information**

| | | | |
|---|---|---|---|
| **Unpaid Principal Balance** | | | **$319,220.87** |
| | Principal Balance | $319,220.87 | |
| | Deferred Balance | $0.00 | |
| **Accrued Interest** | | | **$22,626.96** |
| | Interest From Date | 10/01/2025 | |
| | Good-thru Date | 07/15/2026 | |
| | Interest Rate | 9.00000% | |
| | Per Diem Rate | $78.54 | |
| **Escrow Advance Balance** | | | **$6,130.10** |
| | Taxes | $1,410.35 | |
| | Insurance | $4,719.75 | |
| | Escrow Refund/Disbursement | $0.00 | |
| | Mortgage Insurance | $0.00 | |
| MIP / PMI | | | **$0.00** |
| **Advance Balance** | | | **$345.00** |
| | Valuations | $195.00 | |
| | Preservation | $0.00 | |
| | Inspections | $150.00 | |
| | Postage | $0.00 | |
| | Misc. | $0.00 | |
| Late Charges | | | **$379.92** |
| NSF Fees | | | **$25.00** |
| Fax Fees | | | **$0.00** |
| Payoff Fees | | | **$0.00** |
| Interest on Advance | | | **$54.67** |
| Misc. | | | **$0.00** |
| Unapplied Funds | | | **($159.96)** |
| **Total without Attorney fees** | | | **$348,622.56** |
| **Advance Balance - Excluded** | | | **$2,381.97** |
| | FC Fees | $1,891.25 | |
| | FC Costs | $490.72 | |
| | BK Fees | $0.00 | |
| | BK Costs | $0.00 | |
| **Total with Attorney fees** | | | **$351,004.53** |

**Foreclosure Name**

Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as Owner Trustee for CSMC 2022-NQM2 Trust, a Delaware statutory trust

# Delinquency 1 - Primary Collection (DLQ1/COM2)

```
[redacted]                     QX   D E L I N Q U E N C Y  OWNR n/a 07/14/26  14:23:59
13   CONV. RES.          PER/CLS/OFF  B/  /SP AGE:  4Y  9M IR:  9.00000 INV: QH2
DUE(  9)     35,226.62  DUE 11/01/25(    )(12/15)  ASSUM:          ACQ:02/01/22
LATE CHRG       379.92  PAYMT      @   4,130.10 P: 623 E SOLOMON ST
BAD CK FEES      25.00  L/C AMT           94.98    GRIFFIN GA 30223
OTHER FEES       54.67  PAYMT + LC     4,225.08 M:
TOT DUE      38,413.18* PRIN BAL    319,220.87
SUSPENSE        159.96  P&I            2,467.24    950 EAGLES LNDG PKWY 767
NET DUE      38,253.22  DLQ  6 TIME,PAY 22 DAY     STOCKBRIDGE GA 30281
JTN PROPERTY LLC                                    [redacted]
NAPOLEON SANDERS
                                              *MULTI LN*[redacted]
-IMD:N--------------------- * ADDITIONAL MESSAGES * -----------------WU: P ----
ACTIVE CH 7 BANKRUPTCY *MULTI LOAN*    CASHIER STOP 4
SUSPENDED FORECLOSURE                  PROC STOP = B  BANKRUPTCY
-- Short Comments 2 ------------------------------------------------------------
 DATE  USR                     CONTACT RESPONSE REASON RECALL      F/B  REMIND

071426 (S6 BKRCY DOCMNT
071026 (S6 BKRCY DOCMNT
070626 9QZ <CONTRACT. ACCOUNT DOES NOT SHOW THAT WE HAVE       >
           <RECEIVED FUNDS FOR THE SALE OF THE PROPERTY.       >
           <REFERRED TO FC ATTORNEY                            >
```

# Payoff Calculation Totals (PAY4/PG1)

[redacted] AS-OF 07/15/26 PAYOFF CALCULATION TOTALS 07/14/26 14:25:30

NAME JP LLC CONTACT NAME JTN PROPERTY LLC

---

| | | |
|---|---|---|
| PRINCIPAL BALANCE | 319,220.87 | |
| INTEREST 07/15/26 | 22,626.96 | |
| PRO RATA MIP/PMI | .00 | |
| ESCROW ADVANCE | 6,130.10 | |
| ESCROW BALANCE | .00 | |
| SUSPENSE BALANCE | 159.96- | |
| HUD BALANCE | .00 | |
| REPLACEMENT RESERVE | .00 | |
| RESTRICTED ESCROW | .00 | |
| TOTAL-FEES | 79.67 | |
| ACCUM LATE CHARGES | 379.92 | |
| ACCUM NSF CHARGES | 25.00 | |
| OTHER FEES DUE | .00 | |
| PENALTY INTEREST | 3,096.40 | |
| FLAT/OTHER PENALTY FEE | .00 | |
| CR LIFE/ORIG FEE RBATE | .00 | |
| RECOVERABLE BALANCE | 2,726.97 | |

----------- RATE CHANGES ----------

| INT FROM | RATE | AMOUNT |
|---|---|---|
| 10/01/25 | 9.00000 | 22,626.96 |
| 07/15/26 | | |

TOTAL INTEREST 22,626.96

TOTAL TO PAYOFF 354,125.93

NUMBER OF COPIES: 1 PRESS PF1 TO PRINT

TOTAL PAGE 2 .00

---

# Payment Change Maintenance (PCH2)

[redacted]

```
                        11/01/25  PAYMENT CHANGE MAINTENANCE  07/14/26 14:24:35
JP LLC       1ST PMT 12/01/21  INV QH2/001  TYPE CONV. RES.            MAN B
N  SANDERS   CUR PMT 11/01/25  PB    319,220.87    IR  9.00000         GRP XSX
-----------*------> NO FUTURE PAYMENTS ON FILE TO SCROLL TO <-----*------------
PMT DT     11/01/25           04/01/26
    IR     9.00000            9.00000
   P&I     2,467.24           2,467.24
COUNTY     529.04             529.04
  CITY     0.00               0.00
HAZARD     647.75             647.75
    MI     0.00               0.00
  LIEN     0.00               0.00
    OS     486.07             0.00
  MISC     0.00               0.00

   A&H     0.00               0.00
  LIFE     0.00               0.00
  REPL     0.00               0.00
   HUD     0.00               0.00
 2 P&I     0.00               0.00
   NET     4,130.10           3,644.03
PAYMNT
CHANGE
REASON
```

## Online Appeal

Would you like to submit an appeal to the Board of Assessors? Click here to open an instruction document.

Appeal to Board of Assessors

## Summary

[redacted]

| | | |
|---|---|---|
| **Location Address** | [redacted] | 623 E SOLOMON ST |
| **Legal Description** | | CORNER E SOLOMONS ST & N 1ST ST<br>(Note: Not to be used on legal documents) |
| **Class** | | C3-Commercial<br>(Note: This is for tax purposes only. Not to be used for zoning.) |
| **Tax District** | | GRIFFIN (District 01) |
| **Millage Rate** | | 37.348 |
| **Acres** | | 0.49 |
| **Homestead Exempti** | | No (S0) |
| **Landlot/District** | | 176 / 02 |

View Map




## Owner

JTN PROPERTY LLC
**950 EAGLES LANDING PKWY**
**STE 767**
**STOCKBRIDGE, GA 30281**

## Land

| Type | Description | Calculation Method | Square Footage | Frontage | Depth | Acres | Lots |
|---|---|---|---|---|---|---|---|
| Commercial | E Broad & E Solomon/N 1st>3rd | Lot | 21,344 | 0 | 0 | 0.49 | 2 |

## Commercial Improvement Information

| | |
|---|---|
| **Description** | Apartments |
| **Value** | $383,780 |
| **Actual Year Built** | 1971 |
| **Effective Year Built** | 1975 |
| **Square Feet** | 8160 |
| **Wall Height** | 10 |
| **Wall Frames** | |
| **Exterior Wall** | |
| **Roof Cover** | |
| **Interior Walls** | |
| **Floor Construction** | |
| **Floor Finish** | |
| **Ceiling Finish** | |
| **Lighting** | |
| **Heating** | |
| **Number of Buildings** | 1 |

## Accessory Information

| Description | Year Built | Dimensions/Units | Identical Units | Value |
|---|---|---|---|---|
| Paving: 4" Asphalt >= 3,000 SF | 1995 | 48x100 / 0 | 0 | $2,678 |

## Permits

| Permit Date | Permit Number | Type |
|---|---|---|
| 01/14/2008 | 08.0054 | RENOVATIONS |

## Sales

| Sale Date | Deed Book / Page | Plat Book / Page | Sale Price | Reason | Grantor | Grantee |
|---|---|---|---|---|---|---|
| 10/27/2021 | 4855 97 | 9 39 | $0 | GIFT | SANDERS NAPOLEON | JTN PROPERTY LLC |
| 9/19/2018 | 4333 226 | 9 39 | $185,000 | MULTIPLE PARCELS | INGERSOLL DONNA M | SANDERS NAPOLEON |
| 6/28/2012 | 3649 345 | | $0 | QUIT CLAIM | MOSTILER J CLIFTON | INGERSOLL DONNA M |
| 6/28/2012 | 3649 341 | | $0 | QUIT CLAIM | TOMAN STEPHANIE M | INGERSOLL DONNA M |
| 11/17/2011 | 3644 58 | | $0 | DEED OF ASSENT | MOSTILER NORA ELIZABETH MORGAN | INGERSOLL DONNA M ETAL |
| 2/22/1995 | 1293 172 | | $0 | YEARS SUPPORT | MOSTILER JOHN L | MOSTILER NORA ELIZABETH MORGAN |
| 5/10/1975 | 414 147 | | $90,700 | MULTIPLE PARCELS | MARTIN RUTH G | MOSTILER JOHN L |
| 12/2/1961 | 200 290 | | $0 | NON FAIR MARKET VALUE | | MARTIN RUTH G |

## Valuation

| | | 2026 | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|
| | Previous Value | $423,958 | $415,637 | $382,008 | $325,163 |
| | Land Value | $37,500 | $37,500 | $37,500 | $30,000 |
| + | Improvement Value | $383,780 | $383,780 | $375,459 | $349,330 |
| + | Accessory Value | $2,678 | $2,678 | $2,678 | $2,678 |
| = | **Current Value** | **$423,958** | **$423,958** | **$415,637** | **$382,008** |

## Photos

Skip to main content

Spalding County, GA




## Sketches